# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **C.K., F.K., H.K., D.K., E.K., G.K., and I.K.**

**No. 25-452** (Barbour County CC-01-2023-JA-34, CC-01-2023-JA-35, CC-01-2023-JA-36, CC-01-2023-JA-37, CC-01-2023-JA-38, CC-01-2023-JA-39, and CC-01-2023-JA-40)

## MEMORANDUM DECISION

Petitioner Mother R.K.[1] appeals the Circuit Court of Barbour County's June 4, 2025, dispositional order terminating her parental rights, arguing that the court erred by failing to grant her a post-adjudicatory improvement period and terminating her parental rights instead of imposing a less restrictive alternative.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In June 2023, the DHS filed a petition alleging that the petitioner and the father physically and mentally abused the children by hitting, kicking, name calling, and degrading them, as well as medicating the children to force them to go to sleep. The DHS further alleged that the children participated in Child Advocacy Center ("CAC") interviews,[3] where C.K., F.K., and E.K. reported that the petitioner and the father punished them and their siblings (primarily the older children) by hitting the children with a broom, a board, a belt, and other household items, and by zip-tying C.K.'s arms and legs to a chair for an entire night. The children also disclosed that the parents warned them not to discuss these punishments, with E.K. disclosing that the petitioner previously hit her after she spoke to a Child Protective Services ("CPS") worker. The children further disclosed how the parents forced them to take melatonin and Benadryl. On August 11, 2023, the DHS filed an amended petition raising additional allegations that the petitioner and the father neglected the children's educational needs based on their failure to submit required documentation and the children's lack of basic knowledge in several subjects. The petitioner subsequently filed a motion for a post-adjudicatory improvement period on August 21, 2023.

---

[1] The petitioner appears by counsel J. Brent Easton. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Wyclif S. Farquharson. Counsel Ashley Joseph Smith appears as the children's guardian ad litem ("guardian").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[3] At the time of the interviews, C.K. was sixteen years old, D.K. and E.K. were fifteen years old, F.K. was thirteen years old, G.K. was eight years old, and H.K. and I.K. were seven years old.

The circuit court held an adjudicatory hearing on August 23, 2023,[4] where the petitioner stipulated to using "excessive and inappropriate discipline" and that the statements made by the children in the CAC interviews were "substantially true and accurate."[5] The petitioner further stipulated that she "failed to properly educate her children" resulting in educational neglect. Based upon these admissions, the court adjudicated the petitioner as an abusing parent and the children as abused and neglected children. The court held the petitioner's motion for an improvement period in abeyance pending her completion of a psychological evaluation.

In September 2024, the petitioner filed a "Detailed Answer" to the allegations contained in the amended petition. In her answer, the petitioner described C.K. as being violent towards her and his siblings and denied purposefully throwing objects at the children or otherwise purposefully hitting the children, as alleged in the petition. Instead, she described the actions as accidents and denied forcing the children to take Benadryl. The petitioner also denied that she told the children not to speak about being hit or that an incident involving a CPS worker took place. However, the petitioner admitted to smacking C.K. across his face, asserting that she had done so after C.K. called her derogatory names.

The circuit court held two dispositional hearings in April 2025, during which it received evidence regarding the petitioner's participation in services and acceptance of responsibility. The court first heard from a therapist who provided family and marital counselling to the petitioner and the father starting in early 2024. However, the therapist stated that he did not provide treatment for any issues specific to the allegations underlying the proceedings. The court also received the testimony of four service providers, who reported that supervised visits generally went well. However, several of the providers testified that the petitioner complained about the case during at least one visit—stating that "her children were taken away from her for no reason"—and that H.K. disclosed an incident where the petitioner followed the child into an unsupervised area, questioned her about her siblings, and directed H.K. to make certain representations to CPS workers.

The petitioner testified, stating that she previously stipulated to "excessive punishment and educational neglect" based upon the children's CAC interview statements and that she would be willing to comply with the terms of an improvement period. However, when questioned about her prior admissions, the petitioner repeated the assertions contained in the "Detailed Answer," providing alternative explanations for most of the allegations made by the children, including describing many as accidental rather than disciplinary. Regarding her educational neglect of the children, the petitioner asserted that her only issue was her failure to turn in the proper paperwork. A CPS worker also testified that the DHS was requesting termination of the petitioner's parental rights based upon the petitioner's denial of responsibility for her actions, as shown by the petitioner's repeated attempts to "back track" on her prior stipulations. Finally, the court heard

---

[4] We note that the adjudicatory order indicates that this hearing occurred on July 26, 2023. However, our review of the record, including the adjudicatory hearing transcript, reveals that the hearing occurred on August 23, 2023.

[5] The petitioner did not include recordings of the CAC interviews in the record on appeal.

from three psychologists, all of whom had conducted psychological evaluations of the petitioner. All three psychologists testified that the petitioner had a poor prognosis for improved parenting, as she refused to accept responsibility for her excessive discipline of the children and attempted to attack the children's credibility.

Based upon the evidence presented, the circuit court found that the petitioner challenged her prior stipulation, and the resulting findings, and failed to acknowledge that her conduct constituted abuse and neglect, making an improvement period "an exercise in futility." The court thus found that there was no reasonable likelihood that the petitioner could correct the problems of neglect and/or abuse in the near future. The court also concluded that it would be contrary to the children's welfare to return them to the petitioner's care and that it was in the children's best interests to terminate the petitioner's rights. Accordingly, the court terminated the petitioner's parental rights to the children.[6] It is from the dispositional order that the petitioner appeals.

On appeal from a dispositional order in an abuse and neglect proceeding, this Court "review[s] the final order and the ultimate disposition under an abuse of discretion standard, and . . . the circuit court's underlying factual findings under a clearly erroneous standard." Syl. Pt. 1, *In re S.W.*, 236 W. Va. 309, 779 S.E.2d 557 (2015) (quoting Syl. Pt. 1, *McCormick v. Allstate Ins. Co.*, 197 W. Va. 415, 475 S.E.2d 507 (1996)). Further, "[w]e review a circuit court's decision to grant or deny a post-adjudicatory improvement period under an abuse of discretion standard." Syl. Pt. 1, *In re K.A.*, 251 W. Va. 626, 915 S.E.2d 520 (2025). Before this Court, the petitioner first argues that the circuit court abused its discretion by failing to grant her motion for a post-adjudicatory improvement period. We disagree. Under West Virginia Code § 49-4-610(2)(B), a parent may be granted an improvement period if the parent "demonstrates, by clear and convincing evidence, that [they are] likely to fully participate in the improvement period." However, we have explained that a parent's "[f]ailure to acknowledge the existence of the problem, . . . results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Here, the court was presented with substantial evidence that the petitioner refused to take responsibility for her abuse and neglect of the children at the time of the dispositional hearing in spite of her earlier stipulation that the children's disclosures were accurate. This evidence included the testimony of three psychologists who had conducted psychological evaluations on the petitioner, the petitioner's own testimony, and her "Detailed Answer," which was filed more than a year after the adjudicatory hearing. The petitioner makes a semantic argument that the psychologists improperly based their findings upon the petitioner's refusal to admit to "excessive corporal punishment" instead of excessive discipline. However, this argument does not entitle the petitioner to relief, as this Court does not reweigh the evidence presented to the circuit court. *See State v. Guthrie*, 194 W. Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995) ("An appellate court may not . . . weigh evidence as that is the exclusive function and task of the trier of fact."). The record demonstrates that the court weighed all the evidence presented before finding that the petitioner failed to acknowledge the abuse and neglect

---

[6] The court also terminated the father's parental rights. C.K., D.K., and E.K. have reached the age of majority. The permanency plan for the remaining children is adoption in their current placements.

underlying her adjudication. Therefore, we conclude that the circuit court did not abuse its discretion in denying the petitioner's motion for an improvement period and proceeding to termination. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002) ("The circuit court has the discretion to refuse to grant an improvement period when no improvement is likely.").

The petitioner further argues that the circuit court erred in terminating her parental rights instead of imposing a less-restrictive alternative. We again disagree. Pursuant to West Virginia Code § 49-4-604(c)(6), circuit courts are permitted to terminate parental rights "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child." According to West Virginia Code § 49-4-604(d), "'[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that . . . the abusing adult . . . [has] demonstrated an inadequate capacity to solve the problems of abuse or neglect on [her] own or with help." As stated above, the petitioner's continuous failure to acknowledge her role in the abuse makes the problem untreatable. Accordingly, the circuit court had sufficient evidence to find that there was no reasonable likelihood that the petitioner could correct the conditions of abuse and/or neglect in the near future. We have consistently held that circuit courts are permitted to terminate parental rights "without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 5, in part, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)). Furthermore, the court found that it would be contrary to the children's welfare to return them to the petitioner's care and that termination of her parental rights was in the children's best interests—findings the petitioner does not challenge on appeal. Therefore, we conclude that the circuit court did not abuse its discretion in terminating the petitioner's parental rights to the children.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 4, 2025, dispositional order is hereby affirmed.

Affirmed.

**ISSUED**: May 6, 2026

**CONCURRED IN BY**:

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III

4